## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## COURT FILE NO.:

| | |
|---|---|
| Che C. Clark, Kaitlyn E. Kosse *f/k/*a Kaitlyn Hettinger, and Craig T. Kosse on behalf of themselves and all others similarly situated, | |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **WITH JURY TRIAL DEMANDED** |
| JPMorgan Chase Bank, N.A. *d/b/a* Chase Auto Finance, and Repossessors Inc., | |
| Defendants. | |

## INTRODUCTION

1.      This is a consumer class action arising out of Defendants' unlawful repossession of Plaintiffs' automobile and wrongful conversion of their personal property in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; Minn. Stat. § 336.9-609; and Minnesota state common law.

## JURISDICTION AND VENUE

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1692, 28 U.S.C. § 1331, and 28 U.S.C. § 1367 for pendent state law claims.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the conduct at issue occurred in this District, Plaintiffs reside in this District, and Defendants conduct business in this District.

## PARTIES

4.   Plaintiff Che C. Clark (hereinafter "Clark"), is a natural person who resides in the City of West St. Paul, County of Ramsey, State of Minnesota.  Plaintiff Clark is a "consumer" as defined by 15 U.S.C. § 1692a(3) and a "consumer debtor" as defined by Minn. Stat. § 336.9-102(a)(22).

5.   Plaintiff Craig T. Kosse (hereinafter "Craig Kosse"), is a natural person who resides in the City of Richfield, County of Hennepin, State of Minnesota. Plaintiff Craig is a "consumer" as defined by 15 U.S.C. § 1692a(3) and a "consumer debtor" as defined by Minn. Stat. § 336.9-102(a)(22).

6.   Plaintiff Kaitlyn E. Kosse (hereinafter "Kaitlyn Kosse") (Plaintiffs Craig and Kaitlyn will be collectively referred to as "Kosse Plaintiffs"), is a natural person who resides in the City of Richfield, County of Hennepin, State of Minnesota. Plaintiff Kaitlyn is a "consumer" as defined by 15 U.S.C. § 1692a(3) and a "consumer debtor" as defined by Minn. Stat. § 336.9-102(a)(22).

7.   Defendant JPMorgan Chase Bank, N.A. (hereinafter "Chase"), operates as a National Bank Charter under the Competitive Equality Banking Act and its principal place of business is located at 1111 Polaris Parkway, Columbus, Ohio, 43240.  Defendant Chase is registered to do business in the State of Minnesota as a Foreign Trust Association under Minn. Stat. §§ 303.02 and 303.25.  CT Corporation System, Inc. is the registered agent authorized to accept service on behalf of Defendant Chase at 1010 Dale Street North, St. Paul, Minnesota, 55117.

8.      Defendant Chase is a "secured party" as defined under Minn. Stat. § 336.9-102(a)(73).

9.      Defendant Repossessors Inc. (hereinafter "Repossessors"), is a domestic collateral recovery company incorporated under the laws of the State of Minnesota, is licensed to do business in the State of Minnesota and regularly conducts business within said State, and has a principal place of business located at 10939 89th Avenue North, Maple Grove, Minnesota 55369.  Patrick H. Elliot is the registered agent authorized to accept service on behalf of Defendant Repossesors at 3209 W. 76th Street, # 304, Edina, Minnesota, 55435.

10.     Upon information and belief, Defendant Repossessors does business as Minnesota Repossessor's Inc., MRI, Repossessor's, Inc., and Repo Inc.

11.     Defendant Repossessors regularly uses the mail and telephone in a business, the principal purpose of which is the collection of debts and/or the enforcement of security interests.

12.     Defendant Repossessors regularly collects or attempts to collect debts for other parties and/or regularly enforces security interests for other parties.

13.     Defendant Repossessors is a "debt collector" as defined by 15 U.S.C. § 1692a(6) for the purposes of liability under 15 U.S.C. § 1692f(6).

**FACTUAL ALLEGATIONS – THE EXPERIENCE OF THE REPRESENTATIVE PLAINTIFFS**

**PLAINTIFF CLARK OBTAINS A LOAN WITH DEFENDANT CHASE FOR THE FINANCING OF A 2012 JEEP GRAND CHEROKEE**

14.     On or around January 10, 2015, Plaintiff Clark purchased a 2012 Jeep Grand Cherokee (hereinafter "Jeep") from Walser Chrysler Jeep Dodge in Hopkins, Minnesota.

15.     In connection with purchasing the Jeep, Plaintiff Clark entered into a Minnesota Retail Installment Contract and Security Agreement (hereinafter the "Jeep Agreement").

16.     The Jeep Agreement was contemporaneously assigned to Defendant Chase.

17.     Under the Jeep Agreement, Plaintiff Clark obtained a loan from Defendant Chase to finance the purchase of the Jeep.

18.     Under the Jeep Agreement, Plaintiff Clark granted Defendant Chase a security interest in the Jeep to secure repayment of the loan Defendant Chase issued Plaintiff.

19.     Under the Jeep Agreement, Plaintiff Clark was required to make 72 regular monthly installment payments in the amount of $618.55.

20.     The principal amount of the obligation under the Jeep Agreement is $31,922.19.

21.     The credit service charge under the Jeep Agreement is $12,613.41.

22.     Plaintiff Clark's obligations under the Jeep Agreement were incurred for personal, family, or household purposes.

23.     The Jeep Agreement is a "security agreement" under Minn. Stat. § 336.9-102(a)(74).

24.     The Jeep is a "consumer good" under Minn. Stat. § 336.9-102(a)(23).

25.   Plaintiff Clark's Jeep Agreement with Defendant Chase therefore, is a "debt" as defined by 15 U.S.C. § 1692a(5).

26.   Because Plaintiff Clark incurred the debt for personal and family purposes and purchased the Jeep for such purposes, the entire transaction was a "consumer goods transaction" as defined by Minn. Stat. § 336.9-102(a)(24).

**DEFENDANT CHASE AND REPOSSESSORS UNLAWFULLY REPOSSESS PLAINTIFF CLARK'S JEEP**

27.   As early as April 2015, Plaintiff Clark began to fall behind on her monthly payments under the Jeep Agreement.

28.   Over the course of Plaintiff Clark's loan with Defendant Chase, Plaintiff Clark made numerous late, partial, and irregular payments to Defendant Chase.

29.   Under Minnesota law, when a creditor has repeatedly accepted late and partial payments from the debtor over the course of a loan, the creditor or secured party must notify the debtor that strict compliance with the contract terms will be required, referred to as a *Cobb* notice, before the creditor can lawfully repossess the collateral. *Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232 (Minn. 1980).

30.   Where a creditor has provided no notice of either intent to repossess or contract termination, and where no demand for payment in full has been made, repossession is wrongful as a matter of law.

31.     The late, partial, and irregular payments were repeatedly accepted by Defendant Chase and Plaintiff Clark never received a *Cobb* notice or other notice requiring strict compliance with the original terms of the loan.

32.     Throughout the course of the Jeep Agreement, Defendant Chase sent Plaintiff regular late notices, none of which contained the requisite *Cobb* Notice (collectively "Late Notices").

33.     On or around January 27, 2016, Defendant Chase sent Plaintiff Clark a notice that was different from the Late Notices.  See attached Exhibit 1.

34.     The January 27, 2016 notice was not titled.

35.     The January 27, 2016 notice identified a past due amount and vaguely told Plaintiff Clark that "[Defendant] Chase *may* exercise its rights under your contract at any time."

36.     The January 27, 2016 notice objectively failed to inform Plaintiff Clark that "strict compliance" with the Jeep Agreement will be required.

37.     The January 27, 2016 notice failed to identify a date by which Plaintiff Clark was required to pay the total amount past due.

38.     After January 27, 2016, Plaintiff Clark continued to make late, partial, and irregular payments which were repeatedly accepted by Defendant Chase. Plaintiff Clark never received a *Cobb* notice or other notice requiring strict compliance with the original terms of the loan.

39.     Defendant Chase continued to send Plaintiff regular Late Notices, which did not include the requisite *Cobb* Notice.

40. On or around August 1, 2016, Defendant Chase sent Plaintiff Clark a notice that was different from the Late Notices. See Exhibit 2.

41. The August 1, 2016 notice was not titled.

42. The August 1, 2016 notice identified a past due amount and informed Plaintiff Clark that "[Defendant] Chase *may* exercise its rights under your contract at any time."

43. The August 1, 2016 notice objectively failed to inform Plaintiff Clark that "strict compliance" with the Jeep Agreement will be required.

44. The August 1, 2016 notice failed to identify a date by which Plaintiff Clark was required to pay the total amount past due.

45. The August 1, 2016 notice was identical to the January 27, 2016 notice.

46. Between August 1, 2016 through September 9, 2016, Plaintiff Clark made several late, partial, and irregular payments which were repeatedly accepted by Defendant Chase.

47. After August 1, 2016, Plaintiff Clark never received a *Cobb* notice or other notice requiring strict compliance with the original terms of the loan and/or the threat of repossession.

48. By September 9, 2016, Plaintiff Clark's outstanding balance under the Jeep Agreement was $0.00 and her account with Defendant Chase was current.

49. By October 2016, Plaintiff Clark began to fall behind on her monthly payments under the Jeep Agreement.

50. In October 2016 and November 2016, Defendant Chase sent Plaintiff regular Late Notices. The Late Notices did not include the requisite *Cobb* Notice.

51. Throughout the course of the Jeep Agreement Defendant Chase never insisted upon strict compliance with the payment due date as it has repeatedly and continuously accepted late, partial, and irregular payments from Plaintiff Clark.

52. Defendant Chase allowed Plaintiff Clark to fall behind on her monthly payments and remain behind throughout 2015 and 2016.

53. Defendant Chase failed to send a *Cobb* Notice to Plaintiff Clark after it had accepted Plaintiff Clark's late, partial, and/or irregular payment on or around September 9, 2016.

54. As of the date of this Complaint, Plaintiff Clark has never received a *Cobb* Notice after Defendant Chase accepted her late, partial, and/or irregular payment on or around September 9, 2016.

55. Sometime prior to December 7, 2016, Defendant Chase hired Defendant Repossessors to acquire Plaintiff Clark's Jeep through self-help repossession.

56. On or around December 7, 2016, Defendant Repossessors, by and through one of its repossession agents, arrived at Plaintiff Clark's address to conduct a self-help repossession of Plaintiff Clark's Jeep on behalf of Defendant Chase and at Defendant Chase's request.

57. Sometime in the middle of the night or early morning hours, Defendant Repossessors, by and through one of its repossession agents, unlawfully repossessed Plaintiff Clark's Jeep.

8

58.    In the morning, Plaintiff noticed her Jeep was missing.  Plaintiff Clark could not understand why her Jeep was missing.

59.    Plaintiff Clark contacted Defendant Chase regarding the return or release of her Jeep.

60.    Plaintiff spent hours on the phone with Defendant Chase arguing and pleading with Defendant Chase to get any information and to get Defendant Chase to release the Jeep.  Nonetheless, Defendants continuously refused.

61.    For approximately two days, Defendant Chase failed or refused to help Plaintiff Clark or provide her with any information.  Eventually, Defendant Chase informed Plaintiff Clark that her Jeep had been repossessed.  Defendant Chase provided Plaintiff Clark with Defendant Repossessors phone number.

62.    Plaintiff Clark contacted Defendant Repossessors regarding the release of her personal property.

63.    On December 13, 2016, Defendant Chase sent Plaintiff Clark notice of its intent to sell Plaintiff Clark's Jeep sometime after December 25, 2016.

64.    Upon information and believe, Defendant Chase sold Plaintiff Clark's Jeep and retained the proceeds.

65.    Defendants' conduct made Plaintiff Clark extremely upset, agitated, anxious and confused.  Plaintiff Clark could not understand why Defendants took her Jeep and why Defendant Chase would not provide any relevant or helpful information to Plaintiff Clark for over two days.

66.     As a result of Defendants' actions, Plaintiff Clark has suffered emotional distress, out-of-pocket damages, loss of sleep, anger, anxiety, embarrassment, nuisance, inconvenience, annoyance, and humiliation.

## KOSSE PLAINTIFFS OBTAIN A LOAN WITH DEFENDANT CHASE FOR THE FINANCING OF A 2010 DODGE CARAVAN

67.     On or around September 12, 2013, Kosse Plaintiffs purchased a 2010 Dodge Caravan (hereinafter "Van") from Walser Chrysler Jeep Dodge in Hopkins, Minnesota.

68.     In connection with purchasing the Van, Kosse Plaintiffs entered into a Simple Interest Motor Vehicle Contract and Security Agreement (hereinafter the "Van Agreement") with Defendant Chase.

69.     Under the Van Agreement, Kosse Plaintiffs obtained a loan from Defendant Chase to finance the purchase of the Van.

70.     Under the Van Agreement, Kosse Plaintiffs granted Defendant Chase a security interest in the Van to secure repayment of the loan Defendant Chase issued Kosse Plaintiffs.

71.     Under the Van Agreement, Kosse Plaintiffs were required to make 72 regular monthly installment payments in the amount of $362.49.

72.     The principal amount of the obligation under the Van Agreement is $17,036.12.

73.     The credit service charge under the Van Agreement is $9,061.16.

74.     Kosse Plaintiffs' obligations under the Van Agreement were incurred for personal, family, or household purposes.

75.    The Van Agreement is a "security agreement" under Minn. Stat. § 336.9-102(a)(74).

76.    The Van is a "consumer good" under Minn. Stat. § 336.9-102(a)(23).

77.    Kosse Plaintiffs' Van Agreement with Defendant Chase therefore, is a "debt" as defined by 15 U.S.C. § 1692a(5).

78.    Because Kosse Plaintiffs incurred the debt for personal and family purposes and purchased the Van for such purposes, the entire transaction was a "consumer goods transaction" as defined by Minn. Stat. § 336.9-102(a)(24).

**DEFENDANT CHASE AND REPOSSESSORS UNLAWFULLY REPOSSESS KOSSE PLAINTIFFS' VAN**

79.    By July 2014, Kosse Plaintiffs began to fall behind on their monthly payments under the Van Agreement.

80.    From July 2014 through May 2016, Kosse Plaintiffs made numerous late, partial, and irregular payments to Defendant Chase.  The late, partial, and irregular payments were repeatedly accepted by Defendant Chase and Kosse Plaintiffs never received a *Cobb* notice or other notice requiring strict compliance with the original terms of the loan and/or the threat of repossession.

81.    On or around June 1, 2016, Defendant Chase sent Kosse Plaintiffs a supposed *Cobb* Notice.

82.    The June 1, 2016 notice was entitled Notice of Contract Default.  See Exhibit 3.

83.    The June 1, 2016 notice identified a past due amount of $724.90 and informed Kosse Plaintiffs that their Van may be repossessed unless the total amount past due was paid-in-full by June 11, 2016.

84.    The June 1, 2016 notice informed Kosse Plaintiffs that if they paid the total amount past due by June 11, 2016 they could continue to make payments as if they had not defaulted.

85.    Kosse Plaintiffs did not pay the total amount past due by June 11, 2016.

86.    On or about June 30, 2016, Kosse Plaintiffs made a payment of $725.  This payment was accepted by Defendant Chase.

87.    Defendant Chase did not return Kosse Plaintiffs' June 30, 2016 payment.

88.    Between June 1, 2016 through September 14, 2016, Kosse Plaintiffs continued to make late, partial, and irregular payments which were repeatedly accepted by Defendant Chase.

89.    On or around September 14, 2016, Kosse Plaintiffs made a payment of $1,141.81, which was accepted by Defendant Chase.

90.    After June 1, 2016, Kosse Plaintiffs never received a *Cobb* notice or other notice requiring strict compliance with the original terms of the loan and/or the threat of repossession.

91.    Throughout the course of the Van Agreement Defendant Chase never insisted upon strict compliance with the payment due date as it has repeatedly and continuously accepted late, partial, and irregular payments from Kosse Plaintiffs.

92.   Defendant Chase allowed Kosse Plaintiffs to fall behind on their monthly payments and remain behind for nearly two years.

93.   "[I]f the creditor sends a letter to preserve its rights and then once again accepts late payments, another notice would be required." *See Cobb*, 295 N.W.2d at 237 (emphasis added); *see also Steichen v. First Bank Grand*, 372 N.W.2d 768, 771-72 (Minn. Ct. App. 1985); *Buzzell v. Citizens Auto. Finance, Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011).

94.   Defendant Chase was required to send Kosse Plaintiffs a *Cobb* Notice after June 1, 2016 prior to repossessing their Van.

95.   Defendant Chase failed to send a *Cobb* Notice to Kosse Plaintiffs after it had accepted Kosse Plaintiffs' late, partial, and/or irregular payment on or around September 14, 2016.

96.   As of the date of this Complaint, Kosse Plaintiffs have never received a *Cobb* Notice after Defendant Chase accepted their late, partial, and/or irregular payment on or around September 14, 2016.

97.   Sometime prior to December 8, 2016, Defendant Chase hired Defendant Repossessors to acquire Kosse Plaintiffs' Van through self-help repossession.

98.   On or around December 8, 2016, Defendant Repossessors, by and through one of its repossession agents, arrived at Kosse Plaintiffs' address to conduct a self-help repossession of Kosse Plaintiffs' Van on behalf of Defendant Chase and at Defendant Chase's request.

99.  Sometime in the middle of the night or early morning hours, Defendant Repossessors, by and through one of its repossession agents, unlawfully repossessed Kosse Plaintiffs' Van.

100.  In the morning, Kosse Plaintiffs noticed their Van was missing.  Kosse Plaintiffs could not understand why their Van was missing.

101.  Kosse Plaintiffs contacted Defendant Chase regarding the return or release of their Van.

102.  Defendant Chase informed Kosse Plaintiffs that their Van had been repossessed. Defendant Chase provided Kosse Plaintiffs with Defendant Repossessors phone number.   Kosse Plaintiffs contacted Defendant Repossessors regarding the release of their personal property.

103.  Since December 8, 2016, Kosse Plaintiffs have not received any letters or notices from Defendant Chase.

104.  Upon information and belief, Defendant Chase sold Kosse Plaintiffs' Van and retained the proceeds.

105.  Defendants' conduct made Kosse Plaintiffs extremely upset, agitated, anxious and confused.  Kosse Plaintiffs could not understand why Defendants took their Van.

106.  As a result of Defendants' actions, Kosse Plaintiffs have suffered emotional distress, out-of-pocket damages, loss of sleep, anger, anxiety, embarrassment, nuisance, inconvenience, annoyance, and humiliation.

## CLASS ACTION ALLEGATIONS

107. Plaintiffs bring this action individually and as a class action.

108. Pursuant to Federal Rule of Civil Procedure 23(a-b), Plaintiffs seeks to certify three classes.

109. The first class that Plaintiffs seek to certify is defined as (hereinafter the "*Cobb* Class"):

> *All Minnesota consumers who, within four (4) years of the filing of this Complaint, made one or more late or partial payments on their automobile(s) that were accepted by Defendant Chase and who, thereafter, were not sent a strict compliance/Cobb notice prior to Defendant Chase's repossession.*

110. The *Cobb* Class shall be subject to the following exclusions, who are not members of the *Cobb* Class, eligibility according to the above criteria notwithstanding:

> *All (1) Counsel for Plaintiffs and the Class, (2) Counsel for Defendants, and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.*

111. The second class Plaintiffs seek to certify is defined as (hereinafter the "*Steichen* Class"):

> *All Minnesota consumers who, within four (4) years of the filing of this Complaint, who received an alleged strict compliance/Cobb notice from Defendant Chase and subsequently continued to make at least one late or partial payments on their automobile(s) that were accepted by Defendant Chase and, were not sent a subsequent strict compliance/Cobb notice prior to Defendant Chase's repossession.*

112.    The *Steichen* Class shall be subject to the following exclusions, who are not members of the *Steichen* Class, eligibility according to the above criteria notwithstanding:

> *All (1) Counsel for Plaintiffs and the Class, (2) Counsel for Defendants, and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.*

113.    The third class Plaintiffs seek to certify is defined as (hereinafter the "FDCPA Class"):

> *All Minnesota consumers who, within one (1) year of the filing of this Complaint, made at least one late or partial payments on their automobile(s) that were accepted by Defendant Chase and who, thereafter, were not sent a strict compliance/Cobb notice prior to Defendant Chase's repossession.*

114.    The FDCPA Class shall be subject to the following exclusions, who are not members of the FDCPA Class, eligibility according to the above criteria notwithstanding:

> *All (1) Counsel for Plaintiffs and the Class, (2) Counsel for Defendants, and (3) the assigned Judge, Magistrate Judge, and their clerks and staff.*

115.    The *Cobb* Class, *Steichen* Class, and FDCPA Class meet all factors in Rule 23(a-b) for class certification.

116.    During the class time period alleged here in Defendant Repossessors did not have a policy and procedure in place to verify that before it engaged in repossession activity the co-Defendant Chase had sent the proper legal notice(s) to the Plaintiffs and the putative class.

16

117. As a result of Defendant Chase's failure to comply with Minnesota law required to provide written notice prior to self-help repossession, Defendant Repossessors did not have a present right to possess Plaintiffs' and the putative class members' collateral in violation of 15 U.S.C. §1692f(6).

## Rule 23(a) Requirements

### Numerosity

118. Defendant Chase is one the largest banks in the United States, offering a variety of financial services to consumers in numerous states.

119. Defendant Chase provides automobile financing services to Minnesota consumers who, at one time or another, fall behind on their monthly automobile loan payments and make late or partial payments to Defendant Chase.

120. Upon information and belief, Defendant Chase repeatedly accepted late, partial, and irregular payments from Minnesota consumers.

121. The late, partial, and irregular payments were repeatedly accepted by Defendant Chase and Plaintiffs never received a legally sufficient notice prior to the repossessions described herein.

122. It is plausible that Defendant Chase accepted numerous late, partial, and irregular payments from consumers and then repossessed, or attempted to repossess, said consumers' automobiles unlawfully without sending a sufficient *Cobb* notice in advance of its repossession efforts on such a large number of consumers such that joinder of all in this lawsuit would be impracticable.

123.   Therefore, upon information and belief, the estimated number of class members for each subclass is in excess of 100.

### *Commonality*

124.    All members of the *Cobb* Class, *Steichen* Class, and FDCPA Class had their rights violated in the same manner by the same actions of Defendants Chase and Repossessors.

125.   Common evidence, in particular (1) a list of Minnesota consumers (Defendant Chase customers) who have made late, partial, and irregular payments to Defendant Chase, (2) a list of Minnesota consumers who have made late, partial, and irregular payments to Defendant Chase for which Defendant Chase accepted, (3) a list of Minnesota consumers who never received a legally sufficient *Cobb* notice from Defendant Chase after making late, partial, and irregular payments, and (4) a list of Minnesota consumers who thereafter experienced a wrongful repossession or attempted wrongful repossession of their automobile, will drive resolution of the claims of the *Cobb* Class, *Steichen* Class, and FDCPA Class.

126.   Statutory relief under the FDCPA and Minnesota's Uniform Commercial Code is directed based upon the common conduct of Defendants, *i.e.* the extent to which Defendants' acted without a present legal right to possess Plaintiff's automobile when following through on the repossession efforts, and not the subjective, individual experiences of members of the *Cobb* Class, *Steichen* Class, and FDCPA Class.

*Typicality*

127.  Plaintiffs have the same claims to statutory relief as all other members of the *Cobb* Class, *Steichen* Class, and FDCPA Class.

128.  Any defenses that Defendants may have to liability or quantum of damages with respect to Plaintiffs' claims would be generally applicable to all members of the *Cobb* Class, *Steichen* Class, and FDCPA Class.

*Adequacy*

129.  Plaintiffs bring this lawsuit after an extensive investigation of Defendants' alleged misconduct.

130.  Plaintiffs bring this lawsuit with the intention to stop Defendants' unlawful practices and recovery statutory penalties for all consumers affected.

131.  Plaintiffs will continue to vigorously pursue relief for the *Cobb* Class, *Steichen* Class, and FDCPA Class.

132.  Plaintiffs' counsel, the Consumer Justice Center, P.A. and Adam R. Strauss, Esq. at Tarshish Cody, PLC, practice exclusively in consumer rights law in this District and others.

133.  Plaintiffs' counsel, the Consumer Justice Center, P.A., has been certified as class counsel in dozens of class actions enforcing consumer rights laws in this District and others.

134.  Plaintiffs' counsel is committed to expending the time, energy, and resources necessary to successfully prosecute this action on behalf of the *Cobb* Class, *Steichen* Class, and FDCPA Class.

### *Rule 23(b)(3)*

### *Predominance/Superiority*

### *Predominance*

135.  Statutory relief under the FDCPA follows from evidence that Defendants took nonjudicial action to effect dispossession or disablement of property when there was no present right to possession of the property claimed as collateral through any enforceable security interest, not the subjective experience of any one complainant.

136.  Common issues will predominate substantially over individual issues in the ultimate resolution of this action for the *Cobb* Class, *Steichen* Class, and FDCPA Class.

### *Superiority*

137.  Plaintiffs and Plaintiffs' counsel are not aware of any other pending actions against Defendants related to their unlawful automobile repossessions or attempted repossessions.

138.  Members of the *Cobb* Class, *Steichen* Class, and FDCPA Class have little interest in individual control over this action given the small amounts at stake compared to the cost, risk, delay, and uncertainty of recovery after prosecuting this lawsuit.

139.  Upon information and belief, few members of the *Cobb* Class, *Steichen* Class, and FDCPA Class are aware that Defendants action were unlawful.

140. The class notice mechanism provides an opportunity for uninformed members of the *Cobb* Class, *Steichen* Class, and FDCPA Class to learn about their rights and obtain relief where they otherwise would not have.

## TRIAL BY JURY

141. Plaintiffs are entitled to and hereby demand a trial by jury.  U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT – 15 U.S.C. § 1692f

### Against Defendant Repossessors

142. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

143. Under 15 U.S.C. § 1692f(6), the FDCPA prohibits debt collectors, such as Defendant Repossessors from enforcing a security interest against a debtor's property in the absence of a present right to possession of the collateral.

144. Defendant Chase repeatedly accepted late and partial payments from Plaintiffs, and, upon information and belief, members of the *Cobb* Class, *Steichen* Class, and FDCPA Class, then subsequently failed to comply with the notice requirements established in *Cobb*, 295 N.W.2d at 232, and further defined by *Steichen*, 372 N.W.2d at 768.

145.   There is no present right to possession when a secured party fails to properly
       send the consumer a *Cobb* Notice.

146.   Without a present legal right to possess or take Plaintiffs' vehicles, Defendant
       Repossessors, engaged in a self-help repossession.

147.   Defendant Repossessors' conduct violated 15 U.S.C. §§ 1692f and 1692f(6).

148.   As a result of Defendant Repossessors' violations of the FDCPA, Plaintiffs are
       entitled to actual damages under 15 U.S.C. § 1692k(a)(1), including mental and
       emotional distress, statutory damages of $1,000.00 under 15 U.S.C. §
       1692k(a)(2), and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §
       1692k(a)(3).

## COUNT II.

## WRONGFUL REPOSSESSSION

## MINN. STAT. § 336.9-609

### Against Defendant Chase

149.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint
       as though fully stated herein.

150.   Defendant Chase had no present legal right to possess the automobiles
       belonging to Plaintiffs, under Minn. Stat. § 336.9-609, as that right has been
       further defined and limited by *Cobb*, 295 N.W.2d at 232, and *Steichen*, 372
       N.W.2d at 768.

151.   Defendant Chase had no present legal right to possess the automobiles
       belonging to members of the *Cobb* Class and *Steichen* Class, under Minn. Stat.

§ 336.9-609, as that right has been further defined and limited by *Cobb*, 295 N.W.2d at 232, and *Steichen*, 372 N.W.2d at 768.

152.   Defendant Repossessors' self-help repossession of Plaintiffs' vehicles, and all other self-help repossessions conducted by Defendant Repossessors, was therefore conducted without compliance with Minnesota law. *See Cobb*, 295 N.W.2d 232.

153.   Defendant Chase's self-help repossession was therefore conducted without a present right to possession, in violation of Minn. Stat. § 336.9-609.

154.   Pursuant to Minn. Stat. § 336.9-625, Plaintiffs, and all members of the *Cobb* Class and *Steichen* Class, are entitled to recover from Defendant Chase, statutory damages in the amount of the total finance charge plus ten (10) percent of the amount financed on the automobile loan contracts.

## COUNT III.

## CONVERSION

### Against Defendants Chase and Repossessors

155.   Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

156.   Defendant Chase and Repossessors intentionally interfered with Plaintiffs' use of their property, without a claim of right, by repossessing their automobiles in violation of Minn. Stat. § 336.9-609.

157.   Plaintiffs were entitled to the use and possession of their automobiles.

158. Defendant Chase and Repossessors intentionally interfered with Plaintiffs' use and enjoyment of their property i.e., the automobile, without a claim of right by refusing to allow Plaintiffs possession of the automobiles.

159. Defendant Chase and Repossessors converted Plaintiffs' automobile for their own use and benefit by taking Plaintiffs' automobile without their consent.

160. Defendant Chase and Repossessors converted Plaintiffs' automobile for its own use and benefit by selling Plaintiffs' automobile and retaining the proceeds.

161. Plaintiffs have suffered an absolute deprivation of their property rights and are entitled to recovery for the full value of the automobile and the full value of loss of use of their property due to damages by Defendants.

162. As a direct and proximate result of Defendants' conversion, Plaintiffs have been deprived of the use and possession of their automobile and damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter judgment as follows:

- certifying all three (3) of the classes as described herein;
- awarding Plaintiffs actual and statutory damages against Defendant Repossessors for violations of the FDCPA pursuant to 15 U.S.C. § 1692k;
- awarding the FDCPA Class members statutory damages against Defendant Repossessors for violations of the FDCPA pursuant to 15 U.S.C. § 1692k;
- awarding Plaintiffs reasonable attorney's fees and costs against Defendant Repossessors pursuant to 15 U.S.C. § 1692k;
- awarding the FDCPA Class members reasonable attorney's fees and costs against Defendant Repossessors;

- awarding Plaintiffs statutory damages against each of the Defendants Chase and Repossessors pursuant to Minn. Stat. §336.9-625;
- awarding the *Cobb* Class members and *Steichen* Class members statutory damages against Defendant Chase pursuant to Minn. Stat. § 336.9-625;
- awarding Plaintiffs damages caused by Defendants Chase and Repossessors' conversion of Plaintiff's property;
- awarding such other and further relief as may be just and proper.

**TARSHISH CODY, PLC**

Dated:  March 19, 2017            By:    s/ Adam R. Strauss
                                         Adam R. Strauss (#0390942)
                                         ars@attorneysinmn.com
                                         Scott M. Cody (#0392137)
                                         scody@attorneysinmn.com
                                         6337 Penn Avenue South
                                         Minneapolis, Minnesota 55423
                                         Telephone: (952) 361-5556
                                         Facsimile: (952) 361-5559

                                         and

**CONSUMER JUSTICE CENTER, P.A.**

Dated:  March 19, 2017            By:    s/ Thomas J. Lyons, Jr.
                                         Thomas J. Lyons, Jr., Esq. (#0249646)
                                         367 Commerce Court
                                         Vadnais Heights, MN 55127
                                         tommy@consumerjusticecenter.com
                                         Telephone: (651) 770-9707
                                         Facsimile: (651) 704-0907

                                         ***ATTORNEYS FOR PLAINTIFF***

25

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff Che C. Clark, verifies, certifies, and declares under penalty of perjury, as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.
6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


**EXECUTED ON**   March         19th  ,  2017
                  **Month**      **Day**      **Year**


_____
**CHE C. CLARK**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff Craig T. Kosse, verifies, certifies, and declares under penalty of perjury, as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.
6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED ON ___*March*___   ___*27*___, ___*2017*___
         **Month**          **Day**      **Year**


_____
**CRAIG T. KOSSE**

27

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff Kaitlyn E. Kosse, verifies, certifies, and declares under penalty of perjury, as follows:

1.  I am a Plaintiff in this civil proceeding.
2.  I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3.  I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6.  Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7.  Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.
6.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED ON    _March_    _22_  ,  _2017_
                      **Month**       **Day**       **Year**

_Kaitlyn Kosse_
**KAITLYN E. KOSSE**

28